977 So.2d 600 (2007)
AQUATIC PLANT MANAGEMENT, INC., Appellant,
v.
PARAMOUNT ENGINEERING, INC. and American Safety Casualty Insurance Company, Appellees.
No. 4D06-4589.
District Court of Appeal of Florida, Fourth District.
November 28, 2007.
*601 Douglas J. Roberts of Leiby Stearns and Roberts, P.A., Fort Lauderdale, for appellant.
Guy W. Harrison, Jeff Geller and Edward Etcheverry of Etcheverry Harrison LLP, Fort Lauderdale, for appellee American Safety Casualty Insurance Company.
STEVENSON, J.
The issue in this appeal is whether an unpaid subcontractor on a public project can state a claim against the issuer of the statutorily-required payment bond when the materials for which the subcontractor seeks recovery were neither delivered to the site nor incorporated into the project, but were nevertheless "specially fabricated" for the job. Because the legislature has made persons furnishing labor, services or materials who may qualify as claimants under the public project payment bond law (chapter 255) consistent with those who qualify as lienors under the mechanics' lien law (chapter 713), and since specially fabricated materials are an exception to the delivery or incorporation requirements for those persons under chapter 713, we answer the question in the affirmative. We therefore reverse the order dismissing the subcontractor's claim against the payment bond.
In March 2004, the City of Coral Springs entered into a contract with Paramount Engineering, Inc., for the construction or creation of the "Coral Springs Sportsplex Wetland Creation Project" on publicly-owned property in Broward County. Paramount subcontracted with Aquatic Plant Management, Inc. The contract between Paramount and Aquatic required that Aquatic install a drainage system, and provide and install certain plants. The contract provided that any delays to planting beyond six months would result in maintenance fees to the contractor.
*602 In October 2005, Aquatic brought suit against Paramount and American Safety Casualty Insurance Company, the issuer of the payment bond required by section 255.05, Florida Statutes (2006). Counts I and III of the Amended Complaint stated a claim against Paramount for breach of contract and unjust enrichment/quantum meruit, respectively, alleging the failure to pay Aquatic for the plant materials and the maintenance of these plants when they were not installed as contemplated by the contract. Count II sought relief against both Paramount and American under the payment bond.
American filed a motion to dismiss count II, arguing that Aquatic could not state a claim for recovery under, the payment bond because section 255.05 requires "incorporation" of the materials into the improvement and, while Aquatic alleged the plant materials were "specially fabricated," there was no "specially fabricated" materials exception to chapter 255's "incorporation" requirement. Alternatively, American argued the claim was barred by the statute of limitations. The trial court granted the motion to dismiss without prejudice, finding that Aquatic was a subcontractor; that the "goods manufactured" by Aquatic did not constitute "specially fabricated" materials; and that the goods were not incorporated into the improvement.
Aquatic filed a Second Amended Complaint, adding factual allegations to support its claim that the materials were "specially fabricated," i.e., the contract required it to grow and maintain plants that were not available on the open market, specific to the project, and not suited for use in another project. American again sought dismissal, raising the same arguments advanced in its earlier motion. This time, the court dismissed the claim with prejudice finding "incorporation" of the materials into the improvement is a predicate to claim under section 255.05. The court declined to address American's alternative argument concerning the statute of limitations.
The issues raised here are ones of law, i.e., the dismissal of a claim for failure to state a cause of action and the construction to be afforded section 255.05, and thus subject to de novo review. See Am. Honda Motor Co. v. Cerasani, 955 So.2d 543, 545 (Fla.2007) (issues of statutory construction); Schilling v. Herrera, 952 So.2d 1231, 1234 (Fla. 3d DCA 2007) (dismissal of complaint for failure to state a cause of action), review denied, 962 So.2d 337 (Fla. 2007). Having reviewed the relevant statutes, we conclude that chapter 713's "specially fabricated" materials exception has been incorporated in section 255.05 and thus the trial court erred in dismissing Aquatic's claim against American.
Chapter 713, Florida Statutes, governs mechanics' liens on privately-owned property and provides for a lien in favor of those "who perform labor or services or furnish materials constituting an improvement." See § 713.02(3)-(4), Fla. Stat. (2006). These classes of persons, including "materialman," "laborer," and "subcontractor" are defined by chapter 713. A materialman is one who furnishes materials but not labor, and a laborer furnishes labor but not materials. See § 713.01(15), (19), Fla. Stat. A "subcontractor" is one who is contractually obligated to perform a specific part of the contractor's contract, i.e., labor, services, or the furnishing of materials in accordance with the specifications of the primary contract. See § 713.01(27), Fla. Stat.; see also § 713.06(1). Moreover, to "furnish materials" means to "supply materials which are incorporated in the improvement . . .; or specially fabricated materials for incorporation in the improvement." § 713.01(12), Fla. Stat. *603 (emphasis added). As a consequence of these definitions, under chapter 713, in order for one who has furnished materials to have a lien, the materials must either be "specially fabricated" or actually incorporated into the improvement. See Dublin Co. v. Brady Sales, Inc., 380 So.2d 1095, 1096 (Fla. 5th DCA 1980); Beautyware Plumbing Supply Co. v. Columbiad Apartments, Inc., 215 So.2d 42, 44 (Fla. 4th DCA 1968).
Chapter 713, though, expressly exempts from its scope property owned by the state and its subdivisions. See § 713.01(22), Fla. Stat. Thus, to protect those who work on public projects, the legislature enacted chapter 255. See Fla. ex rel. Westinghouse Elec. Supply Co. v. Marvin, 280 F.Supp. 1019, 1021 (S.D.Fla. 1967). Chapter 255 requires that those who contract with the state or its subdivisions for work on a public project must provide a payment and performance bond. See § 255.05(1)(a), Fla. Stat. Section 255.05(1)(a) requires that the bond be "conditioned upon the contractor's . . . promptly making payments to all persons defined in s. 713.01 who furnish labor, services, or materials for the prosecution of the work provided for in the contract." Chapter 255 does not contain a definitions section. The question, then, is whether section 255.05's reference to the "persons defined in s. 713.01" also incorporates into chapter 255 chapter 713's "specially fabricated" materials exception to the "incorporation" requirement.
American insists the answer is "no," citing Clutter Construction Corp. v. Florida ex rel. Westinghouse Electric Corp., 139 So.2d 426, 429 (Fla.1962), Board of Public Instruction of Sarasota County ex rel. American Radiator & Standard Sanitary Corp. v. Fidelity & Casualty Co. of New York, 184 So.2d 491, 493-94 (Fla. 2d DCA 1966), and Florida ex rel. Westinghouse Electric Supply Co. v. Marvin, 280 F.Supp. 1019, 1021 (S.D.Fla.1967), for the proposition that incorporation into the improvement is required in order for a supplier of materials to be entitled to assert a claim under chapter 255. While American accurately cites the holdings in those cases, none directly considered the question of "specially fabricated" materials and all were decided prior to section 255.05's 1977 amendment, which established potential lienors under the public project payment bond law as "all persons defined in s. 713.01 who furnish labor, services, or materials for the prosecution of the work provided for in the contract."
This, then, leaves us with the language of the statute: "Such bond shall be conditioned upon the contractor's performance of the construction work in the time and manner prescribed in the contract and promptly making payments to all persons defined in s. 713.01 who furnish labor, services, or materials for the prosecution of the work provided for in the contract." § 255.05(1)(a), Fla. Stat, (emphasis added). Subcontractors are persons defined in section 713.01 and may perform labor and services or furnish materials. See §§ 713.01(27), 713.06(1), Fla. Stat. And, under section 713.01(12), "furnish materials" means either to supply materials that are incorporated into the improvement or to supply "specially fabricated" materials.
Having first viewed the text of the relevant statute and finding its meaning less than clear, we must next look to discern legislative intent as it is the "polestar" which guides our statutory construction analysis. See State v. J.M., 824 So.2d 105, 109 (Fla.2002). This court, like others, has opined that the major purpose behind the public property payment bond statute is to provide subcontractors and suppliers on public projects with the same type of protection available to them on *604 private construction projects under the mechanics' lien law. Palm Beach County v. Trinity Indus., Inc., 661 So.2d 942, 944 (Fla. 4th DCA 1995); Miller v. Knob Constr. Co., 368 So.2d 891, 892-93 (Fla. 2d DCA 1979). The statute is also considered "`remedial in nature and therefore, entitled to a liberal construction'" to fulfill its intended purpose. Runyon Enters., Inc. v. S.T. Wicole Constr. Corp. of Fla., Inc., 677 So.2d 909, 911 (Fla. 4th DCA 1996) (quoting Trinity Indus., Inc., 661 So.2d at 944). To interpret section 255.05(1) in such a manner as to include and protect claimants who could qualify as lienors under section 713.01 without also utilizing the ancillary definitions which define the parameters of their status would be unreasonable. Such an interpretation would leave the definition of claimants under section 255.05 incomplete and truncated and, in our view, would be inconsistent with legislative intent. We thus hold that the "specially fabricated" materials exception to the requirement of "incorporation" into the improvement has been incorporated in chapter 255 and, consequently, the trial court erred in dismissing Aquatic's claim on the ground that the plant materials were never incorporated into the project.
As for American's alternative statute of limitations argument, a motion to dismiss may be granted on statute of limitations grounds "`where the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law.'" Bott v. City of Marathon, 949 So.2d 295, 296 (Fla. 3d DCA 2007) (quoting Alexander v. Suncoast Builders, Inc., 837 So.2d 1056, 1057 (Fla. 3d DCA 2002)). Even if we were to accept American's claim that the statute of limitations on a section 255.05 bond claim begins to run upon the completion of fabrication, we cannot affirm the dismissal on statute of limitations grounds as the factual allegations found in the complaint and its attachments are insufficient to allow us to determine, as a matter of fact and law, when fabrication was complete. We thus reverse the order dismissing Aquatic's claim against American. American is not precluded, on remand, from further pursuing its statute of limitations defense.
Reversed and Remanded.
SHAHOOD, C.J., and BELANGER, ROBERT E., Associate Judge, concur.