694 So.2d 756 (1997)
WAL-MART STORES, INC., Appellant/Cross-Appellee,
v.
EWELL INDUSTRIES, INC., Appellee/Cross-Appellant.
No. 96-2596.
District Court of Appeal of Florida, First District.
April 1, 1997.
Rehearing Denied June 9, 1997.
Tracey Scalfano Witt and J. Dixon Bridgers of Bridgers, Gill & Holman, Pensacola, for Appellant.
John Fishel of Boggs & Fishel, Panama City, for Appellee.
PER CURIAM.
Wal-Mart appeals a final judgment imposing an equitable lien for the benefit of Ewell Industries, which supplied materials used in the completion of a new Sam's Club facility in Ft. Walton Beach, Florida.[1] In light of this court's opinion in Wal-Mart Stores, Inc. v. AAA Asphalt, Inc., 677 So.2d 93 (Fla. 1st DCA 1996), which had not been rendered when the trial court decided this case, we reverse.
The general contractor for the project, Wyatt Bros., purchased ready-mix concrete from Ewell and incorporated the material into the project. The terms of the contract between Wal-Mart and Wyatt required Wyatt to furnish a payment bond in the full amount of the contract price for the project. Wal-Mart's Notice of Commencement indicated there was a payment bond covering the project. Work on the project had already begun when Wyatt submitted the bond to Wal-Mart for review and approval. Thereafter, *757 Wal-Mart returned a signed copy of the construction contract to Wyatt.
Because of outstanding claims of lien, the surety, First Assurance, which Wyatt obtained through the Brown Insurance Agency, required Wal-Mart to issue the final two checks jointly to Wyatt and First Assurance for deposit in an escrow account. Despite efforts by Wyatt and Wal-Mart, First Assurance failed to disburse all of the funds appropriately, with the result that Ewell was not paid. Ultimately, both First Assurance and Wyatt became insolvent. Further, it became known that First Assurance was not authorized by the Department of Insurance to issue payment bonds in Florida, as required by section 713.23, Fla.Stat. Wal-Mart paid out all amounts due on the contract and apparently paid additional sums to satisfy several valid mechanic's liens.
Ewell sought an equitable lien against Wal-Mart under both statutory and common law theories. Ewell's theory was that Wal-Mart had failed to ascertain the validity of the payment bond and therefore had misrepresented in the Notice of Commencement that a valid payment bond had been obtained, causing Ewell to fail to timely perfect a mechanic's lien for its own protection. Ewell asserted that under the circumstances, Wal-Mart could not claim the protection of the statute provided the owner of the project. After final hearing, the trial court determined that Wal-Mart had breached a duty of reasonable care owed Ewell with regard to investigation of the payment bond. The court did not find, and there was no evidence to support a finding of, intentional misrepresentation or fraud.
This court recently held that there could be no equitable lien pursuant to section 713.31, Fla.Stat.,[2] absent a finding of intent to defraud. Wal-Mart Stores, Inc. v. AAA Asphalt, Inc., 677 So.2d 93 (Fla. 1st DCA 1996). Clearly the trial court in the present case found only that Wal-Mart had been negligent. We do not find appellee's efforts to distinguish AAA Asphalt on procedural grounds convincing. The present case proceeded to final hearing, and no evidence of intent to defraud was presented.
Appellee contends that even if the statutory lien is not available, the court's ruling may be upheld on a common law lien theory. We do not agree. The case law regarding common law equitable liens indicates that in order to support such a lien there must be evidence of fraud, misrepresentation or other affirmative deception. See, e.g., Rinker Materials Corp. v. Palmer First National Bank and Trust Co., 361 So.2d 156 (Fla.1978); Gordon v. Flamingo Holding Partnership, 624 So.2d 294 (Fla. 3d DCA 1993). The evidence in this case, and the trial court's finding of negligence, does not support a finding of fraud, misrepresentation or other similar affirmative deception.
In its presentation regarding the equities of the situation, given the relationship between the parties and the circumstances of their dealings with one another, appellee argues that it was prohibited from attempting to perfect a mechanic's lien because of the representation that a payment bond was in place. In support of this argument, appellee relies on Resnick Developers South, Inc. v. Clerici, Inc., 340 So.2d 1194 (Fla. 4th DCA 1977). In particular, appellee relies on the statement in Resnick that because a valid payment bond existed, the subcontractor "did not have the legal right to file a claim of lien *758 in this case," although in that case, the subcontractor had filed a claim of lien against the owner's property. 340 So.2d at 1196.
The statement in Resnick on which appellee relies must be considered in light of the facts and issues presented in that case. It was clear from the outset in Resnick that the payment bond was valid. The court noted that it was in proper form and qualified as a payment bond under section 713.23, Fla.Stat. The Resnick court explained that the owner's options regarding the claim of lien were to raise the payment bond as an affirmative defense in an enforcement action, or have the claim of lien transferred to security, as provided for in section 713.23, Fla.Stat. The problem in that case was with the trial court's determination that "`once the defendant-owner and its transfer bond surety gave the transfer bond voluntarily, by mistake of its legal rights or otherwise, it became enforceable against them.'" The appellate court determined that, on the contrary, "[s]uch a transfer is not an acknowledgement by the owner that the claim of lien is valid. It is only a substitution of security pending a judicial determination of the validity of the claim of lien." Further the court said:
[i]f the subcontractor were able to establish that it would have had a valid lien against the property, as might have been the case had there not been a proper s. 713.23 payment bond, then in that event [the subcontractor] could look to the s. 713.24 transfer bond in lieu of the owner's property. However in this case there was a proper s. 713.23 payment bond and the subcontractor did not have, nor could it have had, a valid lien against the owner's property. The 713.24 transfer bond did not give it any additional rights. It simply created an alternative fund from which the [subcontractor's] claim of lien could be satisfied, if in fact [the subcontractor] had a valid claim of lien.
In opposition to appellee's argument based on Resnick, appellant cites several cases in which, appellant contends, the courts have permitted alternative claims based on both mechanic's liens and payment bonds, indicating that a lien may be filed, although not enforced if the payment bond is determined to be valid. The cases appellant relies upon are Julian E. Johnson & Sons, Inc. v. Balboa Insur. Co., 408 So.2d 1044, 1046 (Fla. 1982); Alpha Electric Supply, Inc. v. F. Feaster, Inc., 358 So.2d 892 (Fla. 2d DCA 1978); Hunt Truck Sales and Service, Inc. v. Bonanza Construction, Inc., 353 So.2d 612 (Fla. 4th DCA 1977); and Guin & Hunt, Inc. v. Hughes Supply, Inc., 335 So.2d 842 (Fla. 4th DCA 1976). Upon examination of these cases, we agree with appellant that Resnick is distinguishable from the present case.
The cases appellant cites indicate that the existence of a valid payment bond may be asserted as an affirmative defense to a subcontractor's claim of lien against the property owner. To the extent the payment bond is determined to be valid, the claim of lien is unenforceable. But alternative claims initially are permitted. In Alpha Electric, for example, the court indicated that if the payment bond were to be found valid, it would be a complete defense to a claim against a transfer bond (originally, a mechanic's lien had been filed). But the court said until the validity of the payment bond was ascertained, the supplier of materials was entitled to proceed both against the payment bond and against the transfer bond. In Hunt Truck Sales, the court reversed dismissal of a count for foreclosure of a mechanic's lien, as the validity of the payment bond, which would constitute an affirmative defense, was not apparent from the face of the complaint. And in Guin & Hunt, the court noted a claim of lien had been filed as well as a claim against a payment bond, and stated "[t]he fact that he perfected his lien right, in the event he is not protected under the bond, does not diminish his claim under the bond."
In light of the discussion above, the final judgment imposing an equitable lien is REVERSED.
JOANOS, WOLF and VAN NORTWICK, JJ., concur.
NOTES
[1] We affirm as to Ewell's cross-appeal on attorney's fees.
[2] Appellee sought to impose a lien pursuant to section 713.31, Fla.Stat., which provides in pertinent part:

Remedies in case of fraud or collusion.
(1) When the owner or any lienor shall, by fraud or collusion, deprive or attempt to deprive any lienor of benefits or rights to which such lienor is entitled under this part by establishing or manipulating the contract price or by giving false affidavits, releases, invoices, worthless checks, statements, or written instruments permitted or required under this part relating to the improvement of real property hereunder to the detriment of any such lienor, the circuit court of chancery shall have jurisdiction, upon a complaint filed by such lienor, to issue temporary and permanent injunctions, order accountings, grant discovery, utilize all remedies available under creditors' bills and proceedings supplemental to execution, marshall assets, and exercise any other appropriate legal or equitable remedies or procedures without regard to the adequacy of a remedy at law or whether or not irreparable damage has or will be done.